UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 5-05-52187 |
| | ) | |
| | ) | Bankruptcy Courtroom No. 2 |
| NADEJDA REILLY D/B/A TWO | ) | 274 Max Rosenn U.S. Courthouse |
| WORLDS RESTAURANT D/B/A | ) | 197 South Main Street |
| FINE EUROPEAN CATERING, | ) | Wilkes-Barre, PA 18701 |
| | ) | |
| | ) | October 20, 2005 |
| Debtor. | ) | 12:10 P.M. |

TRANSCRIPT OF HEARING
BEFORE HONORABLE JOHN J. THOMAS
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

For the debtor:          GINO L. ANDREUZZI, ESQ.
                         85 Drasher Road, Suite II
                         Drums, Pennsylvania 18222

For William G. Schwab,   William G. Schwab and Associates
Trustee:                 By:  JASON ZAC CHRISTMAN, ESQ.
                         Post Office Box 56
                         Leighton, Pennsylvania 18235


Audio Operator:          PAMELA A. RADGINSKI

Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

_____

# TRANSCRIPTS PLUS
### 435 Riverview Circle, New Hope, Pennsylvania 18938
e-mail courttranscripts@aol.com

**215-862-1115     (FAX) 215-862-6639**

1          THE COURT:  The Reilly matter, right?

2          MR. CHRISTMAN:  Yes, Your Honor.  We have not been

3  able to resolve the matter.

4          However, we believe we've come to the mutual

5  conclusion that it's primarily the issues of law so that we be

6  able to present cases.  There's two separate matters.  There's

7  the debtor's motion to dismiss and the Trustee's motion to sell

8  personal property.

9          THE COURT:  I've reviewed these motions prior to

10 taking the bench.  So, I'm generally aware of what you're

11 talking about.

12         MR. ANDREUZZI:  Your Honor, a brief --

13         MR. CHRISTMAN:  Yes, I have a copy, Your Honor.

14         THE COURT:  Well, first of all, let's deal with the

15 dismissal issue.  I think -- and I say that because if I

16 dismiss the case, then all this other stuff becomes -- the

17 motion to sell doesn't mean anything, right?

18         MR. CHRISTMAN:  Yes.  Yes.

19         THE COURT:  You want me to dismiss this case.

20         MR. ANDREUZZI:  Yes.

21         THE COURT:  But nothing in your motion really

22 addressed the benefit of unsecured creditors.  You basically

23 just said I'm going to take -- I'll take care of it.  The

24 debtor will take care of the creditors.

25         You don't really say anything more than that.  In

fact, I would actually consider -- you know, sometimes a third

party comes forward, takes care of all the creditors and says

there's no reason to go forward.  But what -- what -- how --

why would you suggest that dismissal of the case is in the best

interest of creditors?  And, again, I didn't read your brief

yet, but --

MR. ANDREUZZI:  Isn't the standard the plain legal

prejudice to the creditors?  And aren't voluntary petitions

given in all cases except in extraordinary cases?

And in this case, is there any substantial abuse that

was committed by -- would be committed by giving this

dismissal?

THE COURT:  Well, --

MR. ANDREUZZI:  In one of your cases --

THE COURT:  But -- but let's go back, though.  You do

agree that dismissal of a Chapter 7 is not a matter of right,

like a 13 is.

MR. ANDREUZZI:  Correct, Your Honor.

THE COURT:  It is a matter in the Court's discretion,

and that discretion turns on what the best interest of

creditors is.

MR. ANDREUZZI:  No, Your Honor.  In fact, you -- you

made distinctions on these various applications in one or two

of your cases.  For example, in -- In Re: Mara (phonetic), and

I'm -- In Re: Mara which I cited in my brief on Page 6, you

1   want to look at the case in terms of is this really an honest,

2   hard luck debtor who is seeking a bankruptcy action.  Or is

3   seeking relief from the Court.

4        It is not out to, you know, abuse the process and get

5   out of having your assets presented or available to creditors

6   to come and foreclose them.  And in that case, you couldn't

7   come to a conclusion that there was a substantial abuse of such

8   as plain prejudice to creditors in such an honest case that it

9   shouldn't be granted.

10       And another guidepost is that, you know, these

11   voluntary petitions in this case, <u>In Re: Geller</u> (phonetic) that

12   I cite on Page 6, those should be granted in all except

13   extraordinary situations.

14       THE COURT:  Well, what do you -- you know, that

15   doesn't seem to be relevant here.  Maybe I'm -- maybe I'm

16   missing something.  You seem to be citing cases where somebody

17   else, a nondebtor, is asking to dismiss a case for bad faith or

18   something of that nature.

19       MR. ANDREUZZI:  Yes.  This is unusual, I think.

20       THE COURT:  This is a case where the debtor is asking

21   to dismiss a case.

22       MR. ANDREUZZI:  Yes, Your Honor, the debtor wants to

23   dismiss this case.  And -- I mean a third factor would be who

24   has objected to this.

25       THE COURT:  Trustee's objecting, right?

1          MR. ANDREUZZI:  None of the creditors have.  No

2  creditor has objected.

3          THE COURT:  The Trustee represents the creditors.

4          MR. ANDREUZZI:  And -- and, Your Honor, in -- they

5  haven't filed -- and the fact that they didn't file in these

6  other cases was a significant point that led in the direction

7  that of granting the dismissal.

8          I mean what prejudice will there be?  The property

9  has not changed hands.  The property is still available.  They

10  have all the creditor remedies.  If you're going to proceed

11  with Mr. Schwab's plan, they're all going to get maybe $300 if

12  his auction is very successful.

13          And if she asked for -- once he made a challenge, as

14  he felt -- this property has extraordinary sentimental value

15  for apparent sacrifice.  Presenter of this property had great

16  financial burdens to themselves.  They're all immigrants,

17  having come over from Russia, they're struggling in life.  The

18  daughter had some talents, they bought her this equipment so

19  she could start a business.  Unfortunately, they couldn't turn

20  a profit.

21          When she found out the Trustee wanted to take this

22  property away, regardless of the value, she said I can't ever,

23  ever stand the thought or go through this, I want to get out of

24  bankruptcy, I'll find a way to pay the creditors, and I will

25  pay them back the money, I just can't leave this --

1        THE COURT:  Well, why don't you give me as much --

2  how -- what -- what -- how would the creditors be paid back?

3        MR. ANDREUZZI:  Now --

4        THE COURT:  What vehicle?

5        MR. ANDREUZZI:  Now the debtor has obtained

6  substantial employment.  She's an assistant manager at Wal-Mart

7  in Hazleton.  She'll be earning $2,080 per month gross, and she

8  gets over $600, instead of $50, for child support.  She now has

9  an income of twenty-six hundred and fifty dollars.  It's very

10  possible she can now make an arrangement with creditors to, you

11  know, satisfy them so she can keep this extraordinary valuable

12  property in terms of its sentiment and meaning from the family.

13        THE COURT:  Well, extremely valuable.  When you say

14  extremely valuable, were the numbers on your schedules

15  accurate?

16        MR. ANDREUZZI:  Yes.  Yes, Your Honor.  We believe

17  they were.  We gave -- not only did we give the purchase price.

18  She submitted her current fair market value quotations from

19  sellers and that's how she arrived at the values.

20        THE COURT:  So, the numbers were accurate as far as

21  you were concerned.

22        MR. ANDREUZZI:  As far as we're concerned --

23        THE COURT:  They were market value numbers?

24        MR. ANDREUZZI:  That's -- well, we've placed values

25  at the time of the petition at $10,718.

1   And I -- I believe purchase prices were double that,

2   two or three years prior.  In other words, she felt the value

3   of the equipment at the time she filed to be $10,718, which is

4   approximately half value of what she originally paid for it.

5   THE COURT:  Half price?

6   MR. ANDREUZZI:  And she purchased it used.  These

7   items were purchased used to begin with, many of them.

8   THE COURT:  You know, let me ask the obvious

9   question, if you don't mind.

10   MR. ANDREUZZI:  I'm sorry, go ahead.

11   THE COURT:  You're saying the debtor wants to keep

12   this property, the debtor has a good paying job.  The Trustee

13   has a dispute on valuation.  Is there -- have you considered

14   converting this case to Chapter 13?

15   MR. ANDREUZZI:  Uh --

16   THE COURT:  And just doing it under a plan where

17   there's some supervision?  And if it doesn't work out, you wind

18   up back in Chapter 7.  But if you pay everybody like you say

19   you're going to pay them, everything goes away?

20   MR. ANDREUZZI:  Well, we've considered it.  I don't

21   know, Your Honor, -- I wouldn't be prepared today to, you know,

22   make a commitment to the Court in that regard.  But I haven't

23   had a chance to discuss it fully with the client who just

24   seemed to implore me and -- to just get out of bankruptcy,

25   period.  And that's all she wanted to do, despite, you know,

1  other options.

2          THE COURT:  Because I think what you're telling me is

3  that if you -- if I dismiss the case, you'll make sure that you

4  pay all the creditors.

5          MR. ANDREUZZI:  Well --

6          THE COURT:  But that's not -- I mean that's --

7          MR. ANDREUZZI:  I don't know if they'll get paid in

8  full, but she can make prebankrupt -- she can make -- she can

9  make, you know, outside bankruptcy arrangements to take care of

10 these people.

11         THE COURT:  But she could have done that before.

12 When did she get the job?

13         MR. ANDREUZZI:  She had no job.  The business failed

14 and she lost.  She just got this job -- she just started on

15 Tuesday, she began the training in Allentown for it.  And now

16 it's more realistic to tell the Court -- a more substantial

17 matter, I imagine, to indicate that she could be able to make

18 arrangements with the creditors if they pursue it or otherwise.

19         THE COURT:  I'm looking for your citation here.  I

20 don't think you gave me the right number on Geller.

21         MR. ANDREUZZI:  Which one is that, Your Honor?

22         THE COURT:  Geller.

23         MR. ANDREUZZI:  Pardon me?

24         THE COURT:  Geller.  I don't think that's the right

25 number you gave me.

1          MR. ANDREUZZI:  774 B.R. --

2          THE COURT:  Seven -- seven seventy-four?

3          MR. ANDREUZZI:  Oh, no, 74 B.R. 665.

4          THE COURT:  That's what I put in here and I didn't --

5    I didn't --

6          MR. ANDREUZZI:  I have -- I have a -- that I have a

7    squib, Your Honor, of -- that I have in the file.  If you give

8    me a moment, I can give it to you, of this case, I can double-

9    check the citation.  Would you like me to do that, Your

10   Honor?

11         THE COURT:  Well, apparently the citation in your

12   brief isn't the right one.

13         MR. CHRISTMAN:  I have no objection to that moment's

14   delay.

15         MR. ANDREUZZI:  Here.

16                         (Pause)

17         MR. ANDREUZZI:  Here, Your Honor, the citation.

18         THE COURT:  685, okay.

19         MR. ANDREUZZI:  Oh, does it say 685?

20         THE COURT:  Right.

21         MR. ANDREUZZI:  I'm sorry, Your Honor.

22         THE COURT:  You know, I guess at our ages, our

23   eyesight isn't what it used to be, is it?

24         MR. ANDREUZZI:  I also --

25         THE COURT:  I include myself in that.

1                **(Pause)**

2        **THE COURT:  I assume you're opposing the request to**

3 **dismiss the case?**

4        **MR. CHRISTMAN:  Yes, Your Honor.**

5        **MR. ANDREUZZI:  Also, I'd like to point out none of**

6 **the reasons set out in that answer constitute valid legal**

7 **defenses to a motion to be dismissed.  He complains that he**

8 **already has to pay himself, he has to pay an auctioneer.  And**

9 **he won't get paid in the event that this case is dismissed.**

10        **I don't -- there's not one sentence in there that**

11 **indicates that someone is being prejudiced by the dismissal.  I**

12 **mean if that's his argument, and it's our position that's the**

13 **only defense, you know, where is it?  I think -- the party --**

14 **the Trustee is considering only himself in the case and not**

15 **other creditors, you know.**

16        **He wants to pay an auctioneer that wasn't even**

17 **approved yet.  He's arguing that he should pay him even though**

18 **that auctioneer didn't perform any services.**

19        **He also argues that he will have been, quote,**

20 **"burdened," because the case has been dismissed.**

21        **And the vague reference to her employment is not**

22 **concrete, as I indicated to the Court.  But the real -- you**

23 **know, the Trustee -- in my mind, the Trustee has not a well**

24 **developed defense to this motion and is not representing**

25 **creditors.**

1    MR. CHRISTMAN:  Your Honor --

2    MR. ANDREUZZI:  Only itself, and his agents.  And
3 that's put forth in his answer.

4    Now, where's the -- what -- what defense?  Is he
5 looking out after creditors?  Doesn't appear so.

6    MR. CHRISTMAN:  Your Honor, the Trustee on behalf of
7 the -- the Trustee does indicate clearly in his complaint that
8 two administrative creditors, at the very least, wouldn't be
9 paid.  Were there have been a claims bar date and claims filed,
10 the Trustee likely would have been happy to allege and cite
11 each claim.  However, that hasn't happened yet, but the Trustee
12 feels that it is well within the purview of all parties
13 involved and the Court to realize that the -- without a
14 conversion to Chapter 13, or a liquidation in Chapter 7,
15 there's certainly no distribution in the immediate future to
16 creditors absent some sort of plan that the debtor would come
17 in with if there hadn't been some indication of consents to
18 dismissal by creditors that were -- have joined.

19    In our review -- I must admit, I don't believe we've
20 reviewed these particular cases.  In our review, these motions
21 were most often granted when creditors had actually come in in
22 support of the motion to dismiss.

23    MR. ANDREUZZI:  That's -- that's not entirely
24 correct, Your Honor.  If you read -- if you look at the case
25 that I've cited --

1     MR. CHRISTMAN:  I haven't gotten to see those.

2     MR. ANDREUZZI:  -- In Re: Marra, which is from the

3 Middle District, a 1993 case that says, "Ordinarily dismissal

4 will prejudice creditors, it will be denied."

5     And at the end, it says, "Another factor to be

6 weighed is the absence or presence of creditor consent."  And

7 in this case, they didn't even respond.

8     THE COURT:  They did get notice?

9     MR. ANDREUZZI:  Absolutely, Your Honor.  Yes.

10 There's -- the return on the notice is 7/15 -- excuse me -- of

11 '05.  That was supplied.

12     And issues that they want to bring up now should have

13 been framed prior to this hearing so you can address them.

14                    (Pause)

15     THE COURT:  This Marra case is really on different

16 facts.  Marra, my recollection was, and my quick review of the

17 filing, Mr. Marra, the Chapter 7 debtor who died in the process

18 of the administration, whose -- whose executor and/or

19 administrator came in and asked that the case be dismissed

20 because the debtor was dead and because there was a vehicle for

21 a liquidation available in the Probate Court.  Heirs came in

22 and objected on the theory that if it stays in bankruptcy,

23 we'll be able to get a discharge and our inheritance will get

24 larger.

25     MR. ANDREUZZI:  Well --

1    THE COURT:  I didn't see that as justification for

2  keeping it in 7.  I mean there were some extraordinary

3  circumstances under that.  But the compelling element was the

4  best interest of creditors, no doubt.  Now, my concern in your

5  case is this --

6    MR. ANDREUZZI:  Well, you --

7    THE COURT:  My concern -- and I'll tell you what my

8  -- I'll tell you what my concern in your case is.

9    MR. ANDREUZZI:  We're saying the same thing, best

10  interest.

11    THE COURT:  I'll tell you what my concern is in your

12  case.  The debtor is securing a decent job.  She's got

13  creditors, which I counted quickly up, of $40,000 worth of

14  unsecured creditors.  She has a reasonable job, fortunately.

15  She wants to deal with her creditors.  She's in bankruptcy now.

16  And although I can't compel her to convert to Chapter 13, I

17  can't imagine why she wouldn't want to have that kind of

18  protection while she's in 13.

19    I can't imagine why she wouldn't want this case

20  dismissed and not have that protection, but she has that

21  option.

22    MR. ANDREUZZI:  She -- she wouldn't even be here if

23  she -- if she elected that, she would be able to at this -- you

24  know --

25    THE COURT:  Right.

1          MR. ANDREUZZI:  -- automatically go to the 13.

2          THE COURT:  That's right.  The Trustee here is -- I'm

3 not going to question the motivation of the Trustee.  I'm going

4 to assume that the Trustee is motivated more by the benefit of

5 the creditors than the Trustee's own benefit.  After all, the

6 Trustee is a fiduciary and if I -- if I were to assume that,

7 the Trustee wouldn't even be qualified to stand in front of me.

8 Okay?

9          So, I have -- I have to assume that the --

10          MR. ANDREUZZI:  You're bending over backwards in

11 pleading your case.  They've never even brought the issue up.

12          MR. CHRISTMAN:  Your Honor, if I could assist you.

13 The case in <u>Marra</u> even indicates -- it doesn't indicate the

14 presence or absence -- the absence or presence of creditor

15 objections.  It's the absence or presence of creditor consent.

16 And while I did not receive electronic notice of an objection

17 to the motion to dismiss, neither are we being presented with

18 any consent of creditors who have engaged in a payment plan.

19          THE COURT:  And I'll be frank.  If the Trustee didn't

20 object here, I certainly wouldn't sua sponte object to a

21 conversion.

22          Generally speaking, I believe the Trustee does speak

23 for the creditor body.  And I would be awfully concerned with

24 outright dismissal of this case.

25          If your concern is -- and the concern that you're

1  voicing is a concern with losing the personalty, that's easily

2  remedied by a conversion of 13.  That will stop the sale in its

3  track.

4          MR. ANDREUZZI:  You may do that.

5          MR. CHRISTMAN:  Your Honor, just --

6          THE COURT:  You have that option.  And that's what

7  makes the suggestion that you will take care of the creditors,

8  that's why I give it a little less weight because you had that

9  option and you didn't exercise it.

10          MR. CHRISTMAN:  Your Honor --

11          MR. ANDREUZZI:  But all of the creditors are in a

12  different position than they were prior to the bankruptcy.  The

13  assets are still there.

14          THE COURT:  But you know how easy it is to --

15          MR. ANDREUZZI:  Once it's --

16          THE COURT:  You know how easy it is to dissipate

17  assets.

18          MR. CHRISTMAN:  Your Honor, if I -- if I could.

19  Because I'd like to -- a little bit on this, maybe it's outside

20  the area of concern.  But my client has objected to conversions

21  to Chapter 13 and Chapter 13 plans in the past and I was here

22  today on one.

23          However, I believe that he would likely be satisfied

24  if unsecured creditors were the ones being paid in a plan with

25  a 60-month plan that paid as little as $167 a month.  And I

1 believe debtor can still convert and be under the old Code

2 because that is where she is now.

3     THE COURT:  Right.

4     MR. CHRISTMAN:  I believe it's the --

5     THE COURT:  And I agree with you.

6     MR. CHRISTMAN:  -- original petition date that

7 controls.

8     THE COURT:  I agree.

9     MR. CHRISTMAN:  So, I'm not saying that we wouldn't

10 object to a conversion or a plan.  But I think I can safely

11 indicate that, you know, a plan in the neighborhood of that

12 amount per month for that period would solve the debtor's

13 issues --

14     THE COURT:  Well, I'm not going to compel a

15 resolution.  But I think I've articulated the reasons why I'm

16 going to deny your motion to dismiss the case.

17     Which takes me to the motion to sell.  Now, that

18 could be easily mooted if you convert.  If you don't want to,

19 we'll deal with a motion to.

20     MR. CHRISTMAN:  Whether it's granted or not, I

21 believe the conversion would still moot the sale.

22     But on the sale issue -- I mean you've already --

23 you've already heard, and I don't think more specific evidence

24 -- that debtor or someone on behalf of debtor, at least,

25 purchased these items for around $20,000 around two to three

1   years ago.  And while debtor's estimate of that value brought

2   it in at around $10,000, and debtor exempts that $10,178.

3          The Trustee did not file an objection to the

4   exemption because there was absolutely no basis to object to

5   the amount exempted.

6          However, even at the meeting of creditors, the

7   Trustee did indicate that the value of the property was in

8   excess of debtor's values.

9          The contest here today on the sale is is the Trustee

10  bound, not by the debtor's exemption, but by the debtor's

11  valuation, even where the Trustee feels that the amount he

12  could get at auction and -- which is compound by an auctioneer,

13  we don't have much in the way of disputed facts.  But, frankly,

14  the auctioneer would not be able to guarantee a $20,000 sale

15  price of the property.  His expectations are actually in the

16  neighborhood of around 17 -- $17,200 from sale of the property,

17  sufficient to, even if the Trustee's litigation costs rise,

18  distribute several thousand dollars, perhaps five or more or

19  significantly more if it's a very fortunate auction, to

20  creditors.

21         And that's over and above paying the debtor our

22  entire exempt interest.  The trustee is not seeking to object

23  or in any way overturn the debtor's exemption, but merely is

24  asserting that he is not bound by the debtor's valuation.  In

25  certain cases, I believe the <u>Taylor</u> case, the 1992 Supreme

1    Court case, the Court indicated that an unknown amount of

2    property which the Trustee had -- on record had indicated he

3    didn't feel was worth that -- was worth valuing, it was -- it

4    listed as unknown value, exempted an unknown amount, the

5    Trustee didn't -- didn't object.

6         However, far more recently, in this -- not in this

7    District, but in the Western District of Pennsylvania, among

8    others, the Trustee has not been bound by debtor's valuation.

9    And the Trustee has not been required to object to a debtor's

10   valuation.

11        While I must state that the Trustee has in the past,

12   I believe this case mirrors those other cases where the Trustee

13   should not be required to object to valuation and isn't bound

14   by the debtor's valuations.  There's no quarrel with the

15   debtor's exemptions.  Were she to seek to amend them and move

16   them around, there may be.  But it doesn't exist at present.

17   And the Trustee feels that the sale offer a significant benefit

18   to the estate, even after paying debtor's exempt interest of

19   $10,718 in full.

20        THE COURT:  Okay.  So, basically you're suggesting

21   that the debtor's schedules only exempted a dollar amount of

22   10,000 plus, not the entire breadth of the personal property

23   described here.

24        MR. CHRISTMAN:  Yes, Your Honor.

25        THE COURT:  Okay.  What I have here -- did you want

1 to respond to that at all?

2      MR. ANDREUZZI: Well, Your Honor, I don't think it's

3 -- what Attorney Christman says is accurate. First of all, at

4 the time -- prior to the first meeting of creditors, the

5 Trustee, on its own initiative, sent an appraiser out to

6 examine and appraise the property. And at the time of the

7 meeting, he had higher valuations. He indicated verbally that

8 his valuation was 17,000 -- approximately $17,333.

9      My client's valuation was $10,718. She claimed all

10 of the property.

11      If you'll look at <u>Taylor</u>, this is a very similar

12 situation. The -- the debtor told the Trustee that her claim

13 was worth 90 to $110,000. And they had settlement offers to

14 that effect.

15      And they disclosed this to the Trustee, the Trustee

16 just didn't believe them or didn't think there was merit. He

17 never challenged the value. Then when the jackpot came in, he

18 ran in and said, not only should I be permitted to get all the

19 money, Your Honor, that I should also -- only a small portion

20 of the proceeds were exempt. However, he didn't challenge the

21 valuations, and -- challenged the validity, not only challenged

22 his -- you know, the exemption itself, but also the validity.

23      The validity also is a -- is two-thing. The one,

24 you're right -- under the law, you're right, the values. This

25 lady claimed all of her property was exempt. How is she to

1  contest his values?  He has the burden of objecting to the

2  value so that he can have a sale based on higher values.

3        And unless the cases he cites were cases like where

4  the value has popped up at later times and the Trustee had no

5  idea what the value was at the time of the meeting.  Once he

6  has the values in front of him, he's obligated to go ahead and

7  file objections.  And then, hey, we're going to have a sale

8  because this property is going to yield much more money.  But

9  having -- not having done it, he's stuck with both values --

10        THE COURT:  I understand your point.

11        MR. ANDREUZZI:  All right.  The other point -- and

12  that's the distinguishing part between the cases they cite to

13  support their proposition that they don't have to be concerned

14  with values.  They could just stand by, let it go through.

15        Another -- and then have a sale regardless without

16  having her an opportunity to defend on the values or without

17  having her get her sentimental property or without having her

18  claim all of the property that they want her to part with.

19        She could have amended -- she could have filed

20  amendments, got rid of at least $3,000 of the perishable goods

21  that she claimed and put this somewhere else on this property.

22  There's a property -- she has exemptions up to $14,500.  He sat

23  back and now he arbitrarily decides in the case he's going to

24  have a sale, even though he knew --

25        THE COURT:  I understand your point.

1          MR. ANDREUZZI:  -- he had the basis to challenge it

2    and he never did.

3          Furthermore, if he doesn't do it, there's case law in

4    Pennsylvania that says after 30 days, that property is no

5    longer estate property.  That reverts back to the creditor at

6    that point in time.  He didn't do it in 30 days.  She has all

7    of the property.  It has already reverted to her.

8          They cited the case from the 9th Circuit that says

9    that it has to be reinvested at a later time potentially or

10   something, but that's not the law in Pennsylvania.  There are

11   two cases out there which are cited, <u>Egan</u> and <u>Berry</u> (phonetic)

12   which have specified after 30 days, the property reverts back.

13         If there's a fraud or something, let them come in and

14   object and get it, but he didn't do that.  He evaded the

15   process set out in 4003(c), and now he wants the fruits of his

16   lack of due process in the case.

17         THE COURT:  I understand your issue.  Let me -- let

18   me suggest this.  Well, let's take a look at the schedules

19   first.  I'm looking at the B schedule here, Schedule B,

20   personal property with regard to the items in question.  We

21   look down to Item 27, which is the business equipment at issue,

22   and that's identified on Line Item 27 as, quote, "See attached

23   list of business equipment in the column of description and

24   location of property."

25         And sliding over to the next column, that says,

current market value of debtor's interest in property without deducting any secured claim or exemption, we have the number $10,718.

Now, I think this can only be understood in the context of how it's listed in Schedule C, which is the exemption schedule. And before I get into that, I will indicate that Schedule B then has a handwritten list of equipment that is specifically identified and valued by presumably the debtor's estimate. It also includes a value -- a gratuitous column marked, paid. But it also has an identification of value. And presumably the 10,718 is a total of the last column on that handwritten slip.

If we move over to Schedule C, property claimed as exempt, and with regard to the exemption at issue, I draw the parties' attention to the next to the last item on Schedule C, which basically says see attached list of business equipment, cites to 11 U.S.C. 522(d)(5). Identifies two items in the column marked value of claimed exemption, eighteen fifty and eighty-eight sixty-eight, which I presume totals the $10,718.

The total value of the property without deducting exemptions is identified as $10,718. The value of claimed exemptions totals $10,718. The value on Schedule B totals $10,718.

So, Schedule C is -- more specifically is identified as property claimed as exempt.

1    Column left identified as description of property,

2 the property is described as see attached list of business

3 equipment.  It's only the valuation that the Trustee

4 challenges, not the list of property exempt.

5    I understand what the Trustee's argument is

6 precisely, and I've had an opportunity to recently review that

7 argument in a case that was decided within the last two weeks

8 called In Re: Daly -- In Re: Arthur Daly, which I did write a

9 written opinion.  I cited a couple of cases, including <u>Taylor</u>,

10 as a comparison where the property scheduled as property was

11 valued as unknown, and the property exempted was valued as

12 unknown, but it was the identical item -- described item of

13 property, ergo.  My understanding that if that property is

14 exempted 30 days after the 341, it leaves the estate and

15 becomes exempt property, absent an objection.  I understand

16 there was no objection to exemptions here.

17    MR. CHRISTMAN:  No, Your Honor.

18    THE COURT:  If I'm going to be consistent -- and by

19 the way, I did cite to another case.  I don't have the Daly

20 opinion in front of me, but I cited to another case that valued

21 the property on the schedules at one dollar of these --

22 identical property on the exemption schedule as one dollar.

23 The valuations were unimportant, except as a measurement of the

24 extent to which the debtor was exempting property.

25    I know there's an argument out there by trustees and

by other -- held by other courts that the -- somehow the
property identified as exempt is really the last column, but
that's not what the forms say.  The forms say property declared
as exempt and to see attached list.  So, they're exempting all
the property.

If they want to exempt a portion of it, they should
have said that.  If the Trustee believes that the -- all the
property cannot be exempt, they should object to it.

I know it's a terrible burden on trustees, but that's
why they get the big dollars.  And I say that facetiously.

MR. CHRISTMAN:  Your Honor --

THE COURT:  I know the Trustee gets almost nothing
for these cases, but that's how I read the rules.

MR. CHRISTMAN:  Your Honor, I'd also like -- we have
also submitted a brief.  I don't know if you had a chance to
review that, but we have similar cases here with Bonor
(phonetic) in the 9th Circuit, Zipansic (phonetic), that's the
9th Circuit, a 1992, we have Zipansic, 2001 in Florida.  And
the Western District of Pennsylvania in Clark.  Once again,
seven thousand five exempt, the Trustee had no reason to object
and no cause to believe it would deprive the estate of any more
than 7,500.

THE COURT:  I did review those cases relative to my
opinion -- my opinion in Daly.  And, frankly, I rejected them.

So, I'm going to incorporate the relevant reason in

1  In Re: Arthur Daly.  Again, I don't have a citation, but it was

2  an opinion that was written within the last two weeks as a

3  reason why I'm denying the motion to sell property.  Okay?

4  Anything further?

5          MR. ANDREUZZI:  No, Your Honor.  Thank you.

6          THE COURT:  Okay.

7          MR. CHRISTMAN:  Do you have a spelling of Daly?

8          THE COURT:  Spelling of the case?

9          MR. CHRISTMAN:  Yeah, if you -- if you knew offhand,

10 if you recalled?

11         THE COURT:  In Re: Arthur Daly.

12         MR. CHRISTMAN:  Is it D --

13         THE COURT:  D-A-L-Y.

14         MR. CHRISTMAN:  D-A-L-Y.  Okay, that is the spelling

15 that I had.

16         MR. ANDREUZZI:  Thank you, Your Honor.

17         MR. CHRISTMAN:  Thank you, Your Honor.

18         THE COURT:  Thank you.

19              C E R T I F I C A T I O N

20         I, Karen Hartmann, certify that the foregoing is a

21 correct transcript to the best of my ability, from the

22 electronic sound recording of the proceedings in the above-

23 entitled matter.

24  _/s/  Karen Hartmann_____        Date:  December 9, 2005

25 TRANSCRIPTS PLUS